Filed 7/21/26  P. v. Canseco CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br><br>v.<br><br>EDGAR JOSE CANSECO,<br>        Defendant and Appellant. | C102136<br><br>(Super. Ct. No. STK-CR-FE-2010-0006980) |

In 2012, a jury convicted defendant Edgar Jose Canseco of the first degree murder and attempted robbery of Kevin Prater with enhancements that the murder was committed during an attempted robbery and for the benefit of a criminal street gang.  The trial court imposed a sentence of life without the possibility of parole plus eight years, and we upheld this judgment on appeal.  (*People v. Mendoza et al*. (June 3, 2014, C071775) [nonpub. opn.].)

In July 2023, Canseco petitioned for resentencing under Penal Code section 1172.6.[1]  The trial court denied his request following an evidentiary hearing (§ 1172.6, subd. (d)) because the court found Canseco was still guilty of felony murder (§ 189, subd. (e)(3)).  Canseco challenges the court's reckless indifference finding.  We will affirm.

---

[1]      Undesignated statutory references are to the Penal Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In accordance with the standard of review, we recite the facts underlying Canseco's convictions in the light most favorable to the judgment. (See *People v. Edwards* (2013) 57 Cal.4th 658, 715.)

This case originated when Canseco, age 19, and his friend Prater saw B.H. (also known as Taz) and Taz's younger brother G.H. (collectively, the brothers) walking home at approximately 2:00 a.m. Canseco and Prater decided to rob the brothers at gunpoint. Because the brothers had nothing of value, Canseco and Prater took their clothes and made them walk home in only their socks. Canseco and Prater often robbed people together. It does not appear that Prater was a gang member, but Canseco and the brothers belonged to the Norteño street gang. Canseco did not know the brothers' gang affiliation at the time he took their clothes. A gang expert testified that Norteño gang members are known to engage in shootings, robbery, assault, and automobile theft. Engaging in this kind of conduct enhances the reputation of the gang. Norteño gang members in the relevant geographical area were also known to shoot people to obtain watches, grills, or other jewelry.

The brothers discovered Canseco's identity and lured Canseco to a party where Taz confronted him. Canseco fled, recruited help, and returned later armed with guns, but he was unable to locate the brothers because they hid in a closet. Sometime thereafter, Canseco, G.H., and a well-respected Norteño gang member known as Pea Boy met to resolve the dispute arising from the robbery. Canseco agreed to repay the cost of the stolen clothes. He also agreed to help Taz rob Prater in retaliation for robbing the brothers. Taz also planned to punch Prater in the face. If Canseco had not agreed, Taz would have robbed Canseco in retribution, and the dispute would have continued.

Pea Boy and Taz introduced Canseco to Emmanuel Mendoza and James Stancampiano, who were also Norteño gang members. Canseco, Taz, Mendoza, and Stancampiano planned and coordinated the retaliation robbery. Canseco gave Taz his

2

loaded .17-caliber rifle[2] and agreed to lure Prater to the robbery location. According to Canseco, Taz was supposed to look Prater in the eye before punching him as "tit for tat." Canseco denied the group planned to kill Prater.

The retaliatory robbery occurred in September 2010. Prater was with his girlfriend, K.A., watching television at Prater's mother's home. Canseco repeatedly called Prater that evening, and while initially ignoring the calls, Prater eventually answered and told K.A. they were going to get Canseco. Prater and K.A. left around 7:15 p.m. Prater drove, while K.A. sat in the front passenger seat. Prater wore various items of value including a watch, diamond ring, diamond earrings, diamond tennis bracelet, and gold grill worn over his teeth.

Prater picked Canseco up at a cul-de-sac in a Norteño gang stronghold by some train tracks. He was dressed in a red hat, red shirt, and black hooded sweatshirt. Canseco asked Prater to take him to another address, and Canseco briefly went inside. Canseco sat behind Prater in the rear passenger area. The group then drove to a grocery store, and K.A. went in to buy snacks. Canseco texted on his phone as they drove around.[3] They then returned to where Prater originally picked up Canseco.

When they arrived, Mendoza got in the car, sitting behind K.A. Less than a minute later, Stancampiano came up to the driver's side window with a long gun and aggressively demanded, " 'give me everything you got.' " The shooter pointed the gun at Prater's chest through the partially open window. Prater accused Canseco of setting him up and refused to comply. Instead, Prater grabbed the gun, and a struggle ensued.

---

[2]     Canseco claimed he had removed the clip from the rifle prior to giving it to Taz, but conceded the clip loaded with ammunition was in the gun during the attempted robbery. Bullets that went to the gun were recovered from Canseco's home.

[3]     Text messages later recovered by police showed Canseco coordinating with the other would-be robbers leading up to the retaliation robbery.

Canseco and Mendoza grabbed Prater from the back seat, putting him in a headlock. Neither Canseco nor Mendoza said anything.

In the interim, K.A. fled the car to hide in some bushes. While she was exiting, she heard a gunshot, and Prater drove away, but crashed into a nearby fence. Another motorist called 911. Responding authorities noted Prater was nonresponsive with a weak pulse. He died of a single gunshot wound to the chest.

Canseco fled the scene with Mendoza, Stancampiano, and Taz (who had been hiding in the bushes). After the shooting, the group made statements suggesting they always intended to shoot Prater, but Canseco denied that had been part of the plan. Thereafter, Taz disposed of the gun.

The People's February 2012 amended information charged Canseco with first degree murder (§ 187; count 1) and attempted robbery (§§ 664/211; count 2). The information also alleged the murder occurred during the commission of a robbery (§ 190.2, subd. (a)(17)). Finally, the information alleged that during counts 1 and 2 a principal was armed with a firearm (§ 12022, subd. (a)(1)) and that these counts were committed for the benefit of a street gang (§ 186.22, subd. (b)(1)). The jury found Canseco guilty of all charges and found all enhancements true. The trial court sentenced Canseco to life without the possibility of parole plus eight years. We upheld this judgment in an unpublished decision. (*People v. Mendoza et al., supra*, C071775.)

In 2023, Canseco filed a section 1172.6 petition for resentencing. The People conceded the prima face showing and opposed Canseco's petition on the merits, arguing he was still guilty of murder as a major participant who acted with reckless indifference to human life. While the People agreed Canseco's youth was relevant to this determination, they asserted his youth was not determinative given the facts of the case.

At the August 2024 merits hearing (§ 1172.6, subd. (d)), the parties stipulated the court could consider the preliminary hearing testimony in Stancampiano's case, wherein

4

Canseco testified.[4]  The court also considered recorded statements Canseco made to a detective in 2018.  The People asserted this evidence established Canseco planned the robbery, supplied the murder weapon, lured the victim to a remote location for gang members to rob him, and communicated with those individuals leading up to the crime. Canseco's youth, while relevant, was not determinative given that he was not significantly younger than the other participants and may have been older than some of them.  Canseco disagreed, arguing Prater's death was the result of a "ridiculous youthful escapade," and while Canseco was a major participant, his "recklessness [was] mitigated by his youthfulness."

The court took the matter under submission and later issued a written decision denying Canseco's resentencing petition.  The court concluded beyond a reasonable doubt that Canseco was a major participant who acted with reckless indifference to human life.  Canseco timely appealed.

## DISCUSSION

Effective January 1, 2019, "the Legislature significantly narrowed the scope of the felony-murder rule in Senate Bill No. 1437 (2017-2018 Reg. Sess.) . . . (Stats. 2018, ch. 1015, § 3).  A felony-murder conviction may no longer rest on the mere commission of and intent to commit an underlying felony.  If a defendant was not the actual killer or an aider and abettor acting with intent to kill, the statute now requires that the defendant be a major participant in the felony who acted with reckless indifference to human life.  (Pen. Code, § 189, subd. (e)(3).)  With the enactment of Senate Bill No. 1437, the Legislature also created a vehicle for defendants previously convicted of murder under the broader

---

[4]     Because the People did not submit a copy of Canseco's appellate record as evidence at the hearing, they ask this court to take judicial notice thereof.  We treat the People's request as one to incorporate Canseco's original appellate record by reference, and as such, grant the request.

5

and now invalidated felony-murder rule to petition for resentencing." (*People v. Emanuel* (2025) 17 Cal.5th 867, 875, fn. omitted (*Emanuel*).) When a defendant makes a prima facie showing demonstrating eligibility for resentencing under section 1172.6, the court must issue an order to show cause and hold an evidentiary hearing, unless the parties waive the hearing and stipulate to vacate the challenged convictions. (§ 1172.6, subds. (c)-(d).) At the hearing, the prosecution must prove beyond a reasonable doubt that the defendant is guilty of murder under current law. (§ 1172.6, subd. (d)(1) & (3).)

We review a finding that a defendant was a major participant in an underlying felony who acted with reckless indifference to human life for substantial evidence. (*Emanuel, supra*, 17 Cal.5th at p. 885; *People v. Reyes* (2023) 14 Cal.5th 981, 988.) Substantial evidence is " ' "reasonable, credible, and of solid value" ' [sufficient] to support a finding beyond a reasonable doubt." (*People v. Banks* (2015) 61 Cal.4th 788, 804 (*Banks*).) " 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 57.) When reviewing a challenge to the sufficiency of the evidence, we ask " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Edwards, supra*, 57 Cal.4th at p. 715.) In so doing, this court does not revisit credibility determinations or evidentiary conflicts. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Rather, a defendant must show that under no hypothesis is there substantial evidence supporting the factfinder's judgment. (*Ibid*.)

*I*
*Major Participant*

"[A] 'major participant' in a robbery is someone whose 'personal involvement' is 'substantial' and 'greater than the actions of an ordinary aider and abettor,' " but a major participant " 'need not be the ringleader.' " (*In re Harper* (2022) 76 Cal.App.5th 450, 459.) Our Supreme Court has provided a nonexhaustive list of factors to determine

whether a defendant was a major participant, including the defendant's: (1) degree of planning; (2) use or provision of a gun; (3) awareness of particular dangers posed by the nature of the crime, the weapons used, or another participant's past violent behavior; (4) proximity to the killing and ability to prevent it; and (5) reaction to the use of lethal force. (*Banks, supra*, 61 Cal.4th at p. 803.) None of these factors are necessary or sufficient on their own, and "all must be weighed in determining the ultimate question of 'whether the defendant's participation "in criminal activities known to carry a grave risk of death" [citation] was sufficiently significant to be considered "major." ' " (*Harper*, at p. 459.)

Canseco does not challenge the trial court's determination that he was a major participant. We nonetheless briefly discuss his role in the botched attempted robbery because showing his degree of participation is relevant to whether he acted with reckless indifference to human life. (*People v. Clark* (2016) 63 Cal.4th 522, 614-615 (*Clark*).)

Here, Canseco supplied a loaded rifle to Taz and then worked with the group to plan the retaliatory robbery. Canseco texted the group updates on the day of the robbery, tricked Prater into giving him a ride to the robbery location, and then held Prater in a headlock from the back seat when Prater attempted to resist. Following Prater's shooting, Canseco did not render first aid or call police. Instead, he fled with the others. This evidence amply showed Canseco was a major participant in the retaliatory robbery. (*Banks, supra*, 61 Cal.4th at p. 803.)

*II*
*Reckless Indifference*

Recklessness has a subjective and objective component. (*Clark, supra*, 63 Cal.4th at p. 617.) Subjectively, " ' "[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed," and [the defendant] must consciously disregard "the significant risk of death [the defendant's] actions create." ' " (*People v. Ramirez* (2021) 71 Cal.App.5th 970, 992.) "Objectively,

7

recklessness is determined by 'what "a law-abiding person would observe in the actor's situation," ' that is, whether [the] defendant's conduct ' "involve[d] a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." ' " (*People v. Oliver* (2023) 90 Cal.App.5th 466, 478 (*Oliver*).)

Factors for determining when a defendant acts with reckless indifference to human life include: (1) awareness and use of weapons; (2) "physical presence at the crime and opportunities to restrain the crime and/or aid the victim"; (3) the duration of the felony; (4) "knowledge of [a] cohort's likelihood of killing"; and (5) "efforts to minimize the risks of the violence during the felony." (*Clark, supra*, 63 Cal.4th at pp. 618-623, capitalization omitted.)

These factors significantly overlap with the major participant factors, meaning the greater the degree of " 'participation in the felony murder, the more likely [the defendant] acted with reckless indifference to human life.' " (*Clark, supra*, 63 Cal.4th at p. 615.) Like the major participant factors, the *Clark* factors are nonexhaustive. (*Id*. at p. 618; *People v. Keel* (2022) 84 Cal.App.5th 546, 558.) For example, courts may also consider gang membership as a factor supporting reckless indifference. (See *Banks, supra*, 61 Cal.4th at pp. 810-811; *People v. Ramirez, supra*, 71 Cal.App.5th at p. 990.) Further, a defendant's youth is also relevant to the reckless indifference analysis. (*Keel*, at p. 558.) Indeed, it is now well recognized that minors and young adults are generally less mature and responsible than older adults because they often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them. (*Ibid*.) Therefore, the defendant's youthfulness must also be considered when determining whether he or she acted with reckless indifference to the victim's life. (*Oliver, supra*, 90 Cal.App.5th at pp. 487-488.) No one factor is required or dispositive. (*Clark*, at p. 618.) Rather, " 'the totality of the circumstances' must be analyzed to determine whether the defendant acted with reckless indifference." (*Emanuel, supra*, 17 Cal.5th at p. 885.)

8

Here, the trial court found "1.) [Canseco] planned the robbery with fellow Norte[ñ]o gang members, most notably 'Taz,' wherein the likelihood of violence was readily apparent; 2.) [Canseco] lured the victim to the scene, precisely as planned; 3.) [Canseco] provided the firearm/ammo for the planned robbery; 4.) During the crime, [Canseco] actively held/restrained the victim to facilitate the planned robbery and 5.) [Canseco] rendered virtually no aid after the victim was shot, but instead fled the scene through the same fence as his confederates." Moreover, the court rejected Canseco's youthfulness argument that characterized Prater's death "as a tragically misguided escapade of the young and foolish," instead noting, "why round-up three other gang members and supply a firearm/ammo for a misguided prank of a friend/acquaintance victim? Rather, [Canseco's] actions demonstrate a callous individual who continually acted as a major participant with reckless indifference to the life of the victim, Mr. Prater." We conclude substantial evidence supports the trial court's finding that Canseco acted with reckless indifference to human life.[5]

A. *Awareness of Weapons and Knowledge of Propensity for Violence*

While Canseco did not personally use a weapon during the retaliation robbery, he supplied the loaded rifle used to kill Prater. Further, although Canseco argues that the plan was only to rob and punch Prater and that he did not know of Stancampiano's inclination for violence until after the shooting, we conclude the circumstances showed an enhanced risk of violence.

During the original robbery, Canseco and Prater took Taz's and his brother's clothing at gunpoint, making them walk home naked except for their socks. Canseco and

---

[5] We review the result, not the rationale behind the trial court's reckless indifference finding such that we find it unnecessary to address whether substantial evidence supports the trial court's suggestion that Canseco rounded up three other gang members to commit the retaliation robbery. (*People v. Turner* (2020) 10 Cal.5th 786, 807.)

9

Prater took the brothers' clothes because they did not have anything valuable to steal. While Prater was not a gang member, Canseco and the brothers belonged to different subgroups of the Norteño street gang. Norteño gang members in the relevant geographical area were known to engage in shootings, robbery, assault, and automobile theft. They also shot people to obtain watches, grills, and other jewelry.

The brothers discovered Canseco's identity and confronted him at a house party where approximately 30 individuals stood ready to fight. Canseco fled, recruited help, and then returned armed with guns but he was unable to locate the brothers. The brothers and Canseco met again with a respected gang member to mediate the issue arising from the robbery. Canseco knew that if he did not agree to assist in the retaliation robbery, the dispute would continue.

Despite Canseco's representations otherwise, we conclude these circumstances support that the retaliation robbery presented a grave risk of violence up to and including shooting Prater. (*Emanuel, supra*, 17 Cal.5th at p. 885.) Such action served to avenge the deep disrespect of stripping the brothers in public, enhance the reputation of the gang, and punish Canseco for his earlier misdeeds. This weighs in favor of a reckless indifference finding.

B. *Duration of the Crime and Efforts to Minimize the Risk of Violence*

The duration of the retaliation robbery resulting in Prater's death was short, weighing against a reckless indifference finding. (*Emanuel, supra*, 17 Cal.5th at p. 886.) However, we conclude Canseco failed to take efforts to minimize the risks presented by the retaliation robbery. (*Id*. at pp. 887-888.) Canseco instead collectively planned an armed robbery with other gang members, supplied the loaded rifle, and arguably relying on his familiarity with Prater, lured Prater deep into Norteño gang territory at night. On the whole, this factor weighs in favor of a reckless indifference finding. (*Ibid.*)

10

C. *Physical Presence and Opportunity to Restrain Violence or Aid Victim*

Here, Canseco was present in the back seat of Prater's car during the retaliation robbery. Rather than attempting to help Prater, Canseco physically restrained Prater from behind by putting him in a headlock and preventing Prater from fleeing or fighting back prior to the shooting. These facts favor a reckless indifference finding. (*Emanuel, supra*, 17 Cal.5th at pp. 889-890.)

Canseco argues that had he known there was a possibility of lethal force, he never would have placed himself behind Prater in the line of fire. But whether the evidence might support this inference is inapposite to whether substantial evidence supports the trial court's determination. (*People v. Zamudio, supra*, 43 Cal.4th at p. 357.)

Moreover, Canseco fled with the others rather than providing aid to Prater following the shooting. The possible negative inferences to be drawn from this flight are lessened by Prater's girlfriend's presence at the scene, and possibility that Canseco relied upon her to call for help while he fled to avoid capture. (See, e.g., *Emanuel, supra*, 17 Cal.5th at pp. 893-894 [possible negative inferences to be drawn from the defendant's flight are less forceful where others are in the area and may offer assistance].) Nonetheless, on the whole, this factor weighs in favor of a reckless indifference finding.

D. *Canseco's Youthfulness*

Canseco argues he was only 19 years old and pressured by peers to commit the retaliation robbery.[6] We acknowledge Canseco's relative youth as lessening his likely appreciation of the risks involved. (*Oliver, supra*, 90 Cal.App.5th at p. 488.) However, the retaliatory robbery did not have the hallmarks of divergence between immature and mature brains. (See *id*. at p. 489 [identifying impulsivity and susceptibility to peer

---

[6] Canseco's argument concerning the trial court's use of the term a "misguided prank" ignores that the trial court's use of this language was in direct response to Canseco's argument and rejected that sentiment.

pressure].) The retaliation robbery was not impulsive; rather, it was a well-planned event done at the behest of Canseco's gang to cure the disrespect the original robbery caused other gang members.[7] (*Oliver*, at p. 489.)

We likewise reject Canseco's contention that he failed to appreciate the risks involved because he was operating under "peer pressure." (*Oliver, supra*, 90 Cal.App.5th at p. 489.) Canseco has not shown he was pressured by older individuals. The only information in the record concerning the ages of the participants reflects that Canseco was older than at least one of his coparticipants. Moreover, while we acknowledge that Canseco participated to lessen the risk to himself given his affront to the brothers and the Norteño gang at large, we do not view this as the kind of "peer pressure" that would lessen the likelihood that Canseco understood the risks associated with his actions. On the contrary, this underscores the risks involved.

E. *The Totality of the Circumstances*

Considering the totality of the circumstances, we find substantial evidence supports the trial court's determination that Canseco acted with reckless indifference to human life. He was a major participant in the retaliation robbery, planned that robbery with other gang members, provided the loaded rifle used to kill Prater, lured Prater deep into gang territory at night, restrained Prater during the attack, and fled the scene rather than attempting to render aid. Although Canseco was 19 years old, the retaliation robbery was not impulsive, and the pressure exerted by Canseco's fellow gang members underscored rather than excused the risks. (*Oliver, supra*, 90 Cal.App.5th at pp. 488-489.) These circumstances show an elevated risk of death beyond that inherent in any garden variety robbery. (*Emanuel, supra*, 17 Cal.5th at p. 884; *Clark, supra*, 63 Cal.4th at p. 623.)

---

[7]     In contrast, the robbery of the brothers was a spur of the moment decision.

To the extent Canseco asserts he only understood Prater was at risk of being robbed and punched, we are not in a position to reconsider competing inferences from the evidence offered below.  (*People v. Zamudio, supra*, 43 Cal.4th at p. 357.)  Accordingly, because substantial evidence establishes Canseco's subjective awareness and conscious disregard of the grave risk of death created by his actions and that his actions were a gross deviation from what a law-abiding citizen would have done in his situation (*Emanuel, supra*, 17 Cal.5th at pp. 883-884; *Clark, supra*, 63 Cal.4th at pp. 616-617), we must affirm.

## DISPOSITION

The judgment is affirmed.

/s/
EARL, P. J.

We concur:

/s/
RENNER, J.

/s/
WISEMAN, J.[*]

---

[*]     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13